**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**Tampa Division**

| | |
|---|---|
| RALPH ROBERTSON, Jr., PAUL PIJACKI on behalf of themselves and all others similarly situated,<br><br>   Plaintiffs,<br><br>v.<br><br>DSE, INC. and AMTEC DEFENSE CORPORATION,<br><br>   Defendants. | )<br>)<br>)   **Case No. 8:13-cv-01931**<br>)<br>)<br>)<br>)   JURY DEMAND<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR ORDER (1) PRELIMINARILY APPROVING THE PARTIES' SETTLEMENT AGREEMENT; (2) PRELIMINARILY CERTIFYING A CLASS FOR SETTLEMENT PURPOSES; (3) APPROVING THE FORM AND MANNER OF NOTICE TO THE CLASS; (4) SCHEDULING A FINAL FAIRNESS HEARING FOR THE FINAL CONSIDERATION AND APPROVAL OF THE PATIES' SETTLEMENT AND (5) FINALLY APPROVING THE SETTLEMENT**

Plaintiffs Ralph Robertson, Jr. and Paul Pijacki ("Named Plaintiffs") and Defendants DSE, Inc. ("DSE") and Amtec Defense Corp. ("Amtec" and collectively with DSE the "Defendants"), sometimes collectively referred to herein as the "Parties", by and through their respective counsel of record, submit this Memorandum in Support of their Unopposed Motion for an Order (1)  Preliminarily approving the Parties' Settlement Agreement between Plaintiffs and the class of similarly situated former employees they represent (the "Class") and the Defendant; (2) Preliminary certifying the proposed Settlement Class for purposes of settlement; (3)  Approving the Form and Manner of Notice to the Class; (4)  Scheduling a Final Fairness

Hearing for the final consideration and approval of the Parties' Settlement; and (5) Finally Approving the Settlement (the "Unopposed Motion").

In support of their Unopposed Motion, the Parties respectfully submit the following:

## Jurisdiction

This Court has jurisdiction over this Unopposed Motion under 28 U.S.C. § 1331 and 29 U.S.C § 2104 (a)(5).   Venue of this proceeding and this Unopposed Motion is proper in this district pursuant to 29 U.S.C. § 2104(a)(5).

## Background

On or about July 26, 2013, the Named Plaintiffs filed a Complaint, entitled Ralph Robertson, Jr. and Paul Pijacki, on behalf of themselves and all other similarly situated, v. DSE, Inc and Amtec Defense Corporation, Case No. 8:13-cv-01931-MSS-AEP (the "WARN Act Litigation") asserting a claim under the WARN Act on behalf of themselves and on behalf of a proposed class of similarly situated individuals.

The Named Plaintiffs, former employees of Defendant DSE, claim that they and the other former employees were separated from their employment at DSE's facility located at 5201 S. Westshore Blvd., Tampa, Florida 33611 (the "Florida Facility") on or around May 31, 2013 without receiving 60 days' written notice of their terminations as required by the WARN Act. During the course of prosecuting this action, Named Plaintiffs and Class Counsel learned that other employees located at DSE's facility located at 859 Victory Trail Road, Gaffney, South Carolina (the "South Carolina Facility" and collectively with the Florida Facility, the "Facility") were also separated from their employment and may also have WARN Act claims.   This Settlement resolves WARN Act claims relating to both the Florida Facility and the South Carolina Facility.

DSE asserts numerous defenses to the WARN Act litigation, including but not limited to: 1) DSE was excused from providing sixty days advance written notice before the layoffs, because the business circumstances which DSE contends caused the extension of the "temporary" furloughs beyond six months were not reasonably foreseeable at the time of the initial layoffs; 2) DSE acted in good faith in not issuing WARN notices sixty days prior to the layoffs, and 3) the WARN Act was not violated in this case.

Amtec asserts numerous defenses to the WARN Act litigation, including, but not limited to, the fact that: Amtec did not purchase DSE as contemplated in the Complaint and has no liability under the WARN Act because it was not an "employer" as that term is used in the WARN Act.  Instead, Amtec claims it merely had a preliminary agreement to purchase assets from DSE, which specifically excluded liabilities including, but not limited to, WARN Act liabilities.  Indeed, Amtec has contended throughout this matter that there is no legitimate basis upon which to assert liability against it under the WARN Act or otherwise.

Class Counsel and DSE disagree as to whether DSE has any obligation or liability under the WARN Act with respect to the claims asserted in the Complaint.  Specifically, the Parties disagree as to whether DSE met the requirements of the "unforeseen business circumstances" statutory exception to liability under the WARN Act, whether DSE acted in good faith in not issuing WARN notices sixty days prior to the layoffs, and whether the WARN Act was violated.

The Parties exchanged preliminary discovery and documents and scheduled mediation in this case for October 29, 2013.  As part of the mediation preparation, the Parties began a discussion as to what each Party viewed as its respective strengths and weaknesses.  As a result of these discussions that have occurred over a period of approximately one month, the Parties

agreed to enter into a Settlement Agreement (the "Agreement") attached hereto as Exhibit A, for which they now seek Court approval.

The Parties have agreed to fully and finally compromise, settle, and resolve any and all demands, claims, damages, and causes of action, present and future, arising from the WARN Act Litigation, and relating to the Facility, as described below.

### The Settlement

The Named Plaintiffs and the Defendants ask the Court to approve the Agreement, for the following reasons:

(a)      The Agreement is the result of arms' length, good faith negotiations over the past months.

(b)      The Agreement reflects the recognition by the Parties that there are significant, complex issues regarding the application of the WARN Act, and the various cases and regulations interpreting the WARN Act to the facts of the case.  In this regard, the Named Plaintiffs and the Defendants disagree as to whether the Defendants have any obligation or liability under the WARN Act with respect to the Class' claims.  If the Named Plaintiffs and the Class are successful in the litigation, however, they contend that they could have a claim against the Defendants for more than $1,638,000.

(c)      To avoid extensive, costly litigation over these issues, the Named Plaintiffs and the Defendants, through their respective counsel, engaged in significant negotiations regarding a possible consensual resolution of the WARN Act litigation.

(d)      As a result of the Parties' negotiations, and as fully set forth in the Agreement, the Named Plaintiffs and the Defendants wish to fully and finally compromise, settle and resolve any and all demands, claims, damages and causes of action, present or

future, relating to the WARN Act, of the Named Plaintiffs and the other Class Members on the terms and conditions set forth in the Agreement.

      (e)    Under the proposed Agreement: DSE shall pay a total sum of $1,050,000.00 (the "Settlement Amount") by the later of (i) 10 days following the entry of an order from the Court approving the Agreement; or (ii) the closing of the purchase by Amtec of the assets of DSE and escrowing of the Settlement Amount.  The Settlement Amount, shall be distributed to the Class and Class Counsel pursuant to the terms set forth in the Agreement. Amtec shall escrow the Settlement Amount from the purchase price from its agreement to purchase the assets of DSE.  Amtec's obligation to do so, however, will arise if, and only if, the transaction involving its purchase of the assets of DSE is closed.  Moreover, nothing in this Settlement obligates or requires Amtec to close on the transaction involving its purchase of the assets of DSE.

      (f)    As part and parcel of the Agreement, the Parties have stipulated that upon entry of the Court's Order approving the preliminary relief requested by this Unopposed Motion, Amtec will be immediately dismissed with prejudice from the WARN Act Litigation, consistent with the terms and conditions of the Parties' Agreement.  A Stipulation and Proposed Order accompanies the materials filed in support of the Unopposed Motion.

      (g)    Based on the information available, DSE hereby represents and warrants that a true and complete listing of the Class members ("Class Members"), including the Named Plaintiffs, is attached to the Agreement as Schedule 1.  DSE believes that the Class constitutes all of the employees encompassed by the Class definition in this case.   The Class Members identified on Schedule 1 are divided into two groups

("Settlement Subclass A" and "Settlement Subclass B").  Settlement Subclass A consists of the employees terminated on or about May 31, 2013, who did not sign a release of claims upon solicitation from DSE of releases in August 2013 (the "Releases"). Settlement Subclass B shall consist of all other Class Members that signed Releases.  The Class Representatives shall have, in addition to the claim provided in paragraph 3, an additional claim in the sum of $2,500 each in payment for the service each provided to the Class in connection with the prosecution of this action (the "Service Payment.").  The Class (including the Class Representatives) listed on Schedule 1 to the Agreement shall have claims against DSE in the amounts shown on Schedule to be paid from Settlement Amount, which shall be funded by DSE in accordance with the Agreement.  Forms W-2 will be distributed by DSE to each Class member.  The amounts set forth on Schedule 1 to the Agreement were derived by computing 60 days of pay and benefits ("Maximum Theoretical WARN Claim") for each Class Member and determining the Class Member's pro rata percentage, based on their inclusion in Settlement Sub-Class A or Settlement Subclass B, of the total Settlement Amount, minus the Service Payments and the Fee Award (i.e., the "Common Fund", which will consist of at least $745,000).   The percentages attributable to the members of each subclass are based on the strength of the claims of the respective subclasses. The calculations of each Class Member's pro rata share is based upon his or her final wage and benefits rates as set forth in the DSE's books and records and are conclusive in that respect.

(h)     Further, and as separately negotiated from the Settlement Amount, upon distribution to the Class, Plaintiffs' Counsel shall be entitled to receive attorneys' fees in the sum awarded by the Court, not to exceed $300,000 (the "Fee Award").  The Fee

Award shall come out of the Settlement Amount.  A Form 1099 will be issued for the attorneys' fees portion of the Settlement Amount.

(i)        The Contents of the Class Notice

## Preliminary Class Certification

As part of preliminary approval of the settlement, Plaintiffs respectfully request that the Court certify a Settlement Class.

**A.  The Settlement Class Meets the Requirements of Rule 23(a).**

A court can certify a settlement class where plaintiffs demonstrate that the proposed class and proposed class representatives meet the four prerequisites in Fed. R. Civ. P. 23(a) – numerosity, commonality, typicality and adequacy of representation – and one of the three requirements of Fed. R. Civ. P. 23(b). Here, pursuant to Rules 23(a) and (b)(3), Plaintiffs seek certification of a defined settlement class (the 'Settlement Class") consisting of:

> Each and every DSE employee who worked at or reported to the
> Facility and were terminated as part of a mass layoff or plant
> closing ordered by DSE at the Facility on or about May 31, 2013
> with the following two subclasses: (a) DSE employees that did not
> sign a Release; and (b) DSE employees that signed a Release.[1]

The existence of "a potential settlement is a relevant consideration when considering class certification. If not a ground for certification per se, certainly settlement should be a factor, and an important factor, to be considered when determining certification." *Temp. Serv., Inc. v. Am. Int'l Groups, Inc.*, 2012 U.S. Dist. LEXIS 86474, *3 (D.S.C. June 22, 2012) (internal quotations omitted); *see also La. Wholesale Drug Co. v. Abbott Labs. (In re Terazosin Hydrochloride Antitrust Litig.),* Case No.99-7143, 2005 U.S. Dist. LEXIS 46189 (S.D. Fla. Mar.

---

[1] Capitalized terms reference the definitions used throughout this Memorandum.

17, 2005) ("All proposed classes must meet the requirements of Rule 23, but the fact of settlement can have an effect on the analysis.")

The claims pending against the Defendants are violations of the WARN Act and the proposed class meets the Rule 23(a) prerequisites of numerosity, commonality, typicality, and adequacy of representation with regard to these claims.

1.    *Numerosity*

The proposed class of approximately 200 DSE employees is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Impracticable does not mean impossible. The Court may find the numerosity factor satisfied if the Court concludes it would be difficult, inconvenient, and wasteful to attempt to join more than 100 plaintiffs into one case, using permissive joinder. "In the WARN Act context, several courts have found that the numerosity requirement was satisfied when at least 50 employees were in the class." *Kizer v. Summit Partners, L.P.*, Case No. 11-CV-38 2012 U.S. Dist. LEXIS 63795 (E.D. Tenn. May 7, 2012); *citing Smith v. Ajax Magnethermic Corp.,* No. 4:02CV0980, 2007 U.S. Dist. LEXIS 85551, 2007 WL 3355080, at *2 (N.D. Ohio Nov. 7, 2007) (certifying class of 55 employees); *Balentine v. Triad Int'l Maintenance Corp.,* No. 01-10357-BC, 2002 U.S. Dist. LEXIS 23571, 2002 WL 31749163, at *1-2 (E.D. Mich. Oct. 17, 2002) (certifying class of 284 individuals); *Finnan v. L.F. Rothschild & Co., Inc.*, 726 F. Supp. 460, 465 (S.D.N.Y. 1989) (certifying class of 127 employees).

The efficiency of a Rule 23 class action in this matter is obvious. Litigation by individuals or small groups of plaintiffs in at least two courts across the United States would be wasteful. Unless the matter is voluntarily concluded here, there will be costly and protracted litigation.

2.      *Commonality*

The Rule 23(a)(2) requirement for common questions of law or fact for a class action is achieved with the existence of a single common question of either law or fact; not all questions of law or fact need be common. *L.S. v. Delia*, 2012 U.S. Dist. LEXIS 43822, \*25 (E.D.N.C. March 29, 2012) *citing* Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2556 (2011).

The Supreme Court recently clarified that, in order to satisfy the commonality requirement of Rule 23(a), the plaintiff must "demonstrate that the class members 'have suffered the same injury.'" *Dukes*, 131 S. Ct. at 2551 (quoting *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 156, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982)), and that the claim "depend[s] upon a common contention" that "is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

Here, there are several questions of law or fact common to all of the proposed settlement class members. Some of the questions noted by the parties include "(1) whether the class members lost their employment as a result of 'plant closure' or 'mass layoff' as defined in the WARN Act; (2) whether a sufficient number of employees suffered a 'loss of employment,' as defined in the WARN Act, to trigger an advance notice obligation; (3) whether Defendants were excused from the 60-day notice requirement under the WARN Act through the 'unforeseeable business circumstances' exception; (4) whether Defendants were excused from the 60-day notice requirement under the WARN Act through the 'faltering company' exception; (5) whether the Defendants acted in good faith; and (6) whether Amtec has any liability as an "employer" under the WARN Act.

Further all class members have suffered a similar harm. In this instance, it is alleged that Defendants failed to provide the requisite sixty-day notice to its former employees, and those employees were entitled to receive pay for those days without notice under the WARN Act. Although the actual damages for each class member will differ (i.e. taking into account variables such as differing pay rates and dates of termination), the same mathematical formula is used to calculate damages for each class member, and those damages stem from the same type of harm experienced by the entire class. Hence, the commonality test is satisfied. *Dukes*, 131 S. Ct. at 2551.

   3.   *Typicality*

The typicality prerequisite of Rule 23(a) generally is satisfied if the plaintiffs' claims arise from the same practices and are based on the same theory of law as the claims of the class. *Vega v. T-Mobile USA, Inc.,* 564 F.3d 1256, 1275 (11th Cir. 2009) ("A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3). Typicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large.") (internal quotations omitted). In the words of the Supreme Court, "[t]he typicality requirement is said to limit the class claims to those fairly encompassed by the named plaintiffs' claims." *Gen. Tel. Co. of the N.W., Inc. v. Equal Employment Opportunity Comm'n*, 446 U.S. 319, 330 (1980). This alignment of similar interests and similar injuries assures that the class representatives have interests and incentives consistent with those of absent class members, such that the absentee members' interests are protected: "[A] plaintiff with typical claims will pursue his or her own self interest and in so doing will advance the interests of the class members, which are aligned with those of the

representative." 1 Newberg on Class Actions, supra at § 3.13, p. 3-77; *see also Vega*, 564 F.3d at 1275.

The typicality requirement has been satisfied. Named Plaintiffs, the proposed settlement class representatives were allegedly terminated without cause from the same facility around the same time period as the other class members in violation of the WARN Act. Thus, the questions of law and fact common to the class also apply to Named Plaintiffs. In addition, Named Plaintiffs suffered the same harm as the rest of the class in that they failed to receive the requisite sixty-day notice as required by the WARN Act, and they are entitled to receive pay for those days for which they did not receive notice.

### 4. *Adequacy of Representation*

The fourth requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Gooch v. Life Inv. Ins. Co. of Am.*, 672 F.3d 402 (6th Cir. 2012) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997)). While identical interests between the class representative and class are not required, "something stronger than shared interests" is necessary. *Id*. Moreover, with respect to class counsel, plaintiff's attorneys should be "qualified, experienced and generally able to conduct the litigation, and [] consider whether the class members have interests that are not antagonistic to one another." *Beattie v. CenturyTel, Inc.,*, 511 F.3d 554, 562-63 (6th Cir. 2007); *see also Kirkpatrick v. J.C. Bradford & Co.,* 827 F.2d 718 (11th Cir. 1987).

Here, the adequacy-of-representation requirement has been met. Named Plaintiffs are adequate class representatives given that their interests are nearly identical to the other class

members and they have suffered a similar harm. There is also no obvious conflict of interest between Named Plaintiffs and the other class members.

With respect to class counsel, the extensive experience counsel have representing Rule 23 classes are detailed extensively in the declarations of J. Gerard Stranch and Marcus Braswell filed contemporaneously herewith.  Branstetter, Stranch and Jennings, PLLC and Sugarman and Susskind PLLC have represented Rule 23 classes in numerous cases as detailed in each firm resume attached to the respective declarations.  Presumably, the adequacy of counsel will not seriously be questioned.

**B.  The Settlement Class Meets the Requirements of Rule 23(b)(3).**

In addition to meeting the requirements of Rule 23(a), the proposed class must also fall within one of the three circumstances provided in Rule 23(b) for class certification to be proper. One of those circumstances is that a class may be maintained where the court finds that common questions of law or fact among the parties predominate over individual questions and that a class action is therefore the best available method for adjudicating the controversy. See Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) applies in this case.  Under Rule 23(b)(3), a proposed class must satisfy two factors: predominance and superiority.

*1.     Predominance*

The predominance requirement tests "whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *AmChem Prods., Inc.*, 521 U.S. at 623. "[A] plaintiff must establish that 'the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof.'" *Beattie*, 511 F.3d at 564 (citation omitted). Determining whether the plaintiffs can clear the predominance hurdle set by Rule 23(b)(3) also requires [the court] to

consider how a trial on the merits would be conducted if a class were certified. *Andrews v. AT&T*, 95 F.3d 1014, 1023 (11th Cir. 1996).  Though not a determination on the merits, the Rule 23(b)(3) analysis  helps prevent the class from degenerating into a series of individual trials. *Id*. One justification for the predominance requirement is that "[i]t is only where this predominance exists that economies can be achieved by means of the class-action device." *Coleman v. Gen. Motors Acceptance Corp.*, 296 F.3d 443, 448 (6th Cir. 2002) (citing Fed. R. Civ. P. 23(b)(3) advisory committee notes).

Here, even taking into account the differences in the damages each class member will recover, the common questions of law and fact predominate. In a WARN Act case similar in many respects to the instant action, a district court in the Northern District of Ohio observed "the individual factors surrounding each plaintiff's termination would have little effect on the WARN claims." *Smith v. Ajax Magnethermic Corp.*, No. 4:02CV0980, 2007 U.S. Dist. LEXIS 85551, 2007 WL 3355080, at *4 (N.D. Ohio Nov. 7, 2007). The court concluded that "[t]he overriding question involves the Defendants' obligation under the WARN Act to provide adequate notice of termination, which affects each class member in the same manner." *Id*. Similarly, here, there are many common questions of law and fact. Among several others noted earlier, the court must determine whether Defendants provided the requisite sixty-day notice to the class members and whether there was a "mass layoff" or "plant closure" affecting at least fifty employees. The defenses that Defendants could have raised at trial would also have involved questions of law and fact that pertained to all of the class members. Admittedly, the Court will have to make some individual determinations with respect to each class member's damages. Yet those damages stem from the same general injury experienced by the class members and, based on the terms of the Agreement, is calculated for each class member using the same mathematical formula. Taken as

a whole, the majority of the issues in this case apply to the class as a whole and predominate over any individualized determinations that this Court will have to make. Accordingly, the predominance requirement is satisfied.  *Id*. (finding predominance under Rule 23(b)(3) in a WARN Act case); *Kizer*, 2012 U.S. Dist. LEXIS 63795 (same).

> 2.    *Superiority*

The Court must also consider whether the superiority requirement has been met. In making this determination, the Court can consider (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.  Fed. R. Civ. P. 23(b)(3).

Because the Court is asked to certify this action for settlement purposes only, it need not determine whether the Class would be manageable for litigation purposes in order to approve the Settlement Class.

Given the amount of damages for most class members in this case and the fact that there are common issues shared by the class members, the individual interest in controlling the case through separate actions is relatively low. *See Smith*, 2007 U.S. Dist. LEXIS 85551, at *5; *Kizer*, 2012 U.S. Dist. LEXIS 63795, at *20-21. Moreover, class counsel is not aware of any other pending litigation concerning the WARN Act rights of the proposed settlement class members. (Stranch Decl. ¶ 5; Braswell Decl. ¶ 8.)   Furthermore, concentrating the litigation and settlement of this action in this forum is in the interest of judicial economy. Finally, as it relates to the settlement process, the parties contend they already have all the names and addresses of the proposed settlement class because this information was recovered from DSE's records. Hence,

the superiority factor has been met.  *Smith*, 2007 U.S. Dist. LEXIS 85551. (finding superiority

under Rule 23(b)(3) in a WARN Act case); *Kizer*, 2012 U.S. Dist. LEXIS 63795 (same).

### The Contents of the Class Notice

The Parties submit that the proposed Class Notice, a copy of which is attached hereto as

Exhibit "B," meets the requirements of Fed. R. Civ. P. 23(c)(2)(B).  That rule, in pertinent part,

provides as follows:

> "The notice must concisely and clearly state in plain, easily
>
> understood language:
>
> • the nature of the action,
>
> • the class claims, issues or defenses
>
> • that a class member may enter an appearance through counsel if the
>
>   member so desires, and
>
> • the binding effect of a class judgment on class members under Rule
>
>   23(c)(3)."

The proposed Class Notice satisfies each of the foregoing requirements.  The Notice

states the nature of the action, the Class claims, and the issues and defenses.  The Notice also

states that a Class Member may enter an appearance through counsel, and that the Agreement,

when approved, will be binding on all Class Members.  The Notice also sets forth the terms of

the proposed Agreement and the right of each Class Member to object to the proposed

Settlement.  See Rule 23(e)(4)(A).  The Notice summarizes the nature of the pending WARN

ActLlitigation and the Agreement's essential terms and provides Class Members with their

individualized, projected gross and net settlement amounts after attorney fees. The Notice also

apprises the Class, among other things, that complete information regarding the Agreement is

available upon request from Class Counsel and that any Class Member may appear and be heard at the hearing on approval of the Agreement. In addition, the notice informs the Class Members of the request for the approval of attorneys' fees.  *See* Fed. R. Civ. P. 23(h).

### The Manner of Notice

As to the manner of giving notice, Fed. R. Civ. P. 23(c)(2)B) provides, in pertinent part, as follows:

> "For any class certified under Rule 23(b)(3) the Court must direct to class members the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort."

An individual mailing to each class members' last known address has been held to satisfy the "best notice practicable" test.  *Eisen v. Carlisle & Jacquelin et al.,* 417 U.S. 156 (1974) (individual mailings satisfy Rule 23 (c)(2));

The Agreement provides that a Court-approved notice shall be mailed to the last known address of each of the Class Members, as reflected in DSE's records, or as instructed by the Class Member through Class Counsel. The mailing and the fairness hearing will be timed so that the Class Members will have not less than 30 days from the date of the mailing to object to the Agreement and to appear by counsel.  The Parties submit that giving notice in this manner satisfies the "best notice practicable" test.  In the case of any returned envelopes, Class Counsel will forward to such corrected addresses as Class Counsel may be able to obtain from a national database to which Class Counsel subscribes or as Class Counsel may otherwise obtain.  Class Counsel represents that they have been able to obtain corrected addresses from the national database in most instances.

### THE SETTLEMENT SHOULD BE APPROVED AS FAIR, REASONABLE AND ADEQUATE TO THE CLASS

This Court has the task of reviewing the proposed settlement (because a class can only settle its claims with the Court's approval) and discretion in determining whether the proposed settlement should be approved.  *See In re Nissan Motor Corp. Antitrust Litigation*, 552 F.2d 1088 (5th Cir. 1977) ("In the management of class actions, Fed. R. Civ. P. 23 necessarily vests the district courts with a broad discretion to enable efficacious administration of the course of the proceedings before it.")

The Court must reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties and the settlement, taken as a whole, is fair, reasonable and adequate to all concerned. *See Holmes v. Continental Can Co.*, 706 F.2d 1144, 1147 (11th Cir. 1983); *see also Clark Equip. Co. v. Int'l Union, Allied Indus. Workers of Am., AFL-CIO*, 803 F.2d 878, 880 (6th Cir. 1986).  In determining whether a proposed settlement is fair, adequate and reasonable, the Court must consider the following: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the anticipated complexity, expense, and duration of litigation; (5) the opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.  *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1244 (11th Cir. 2011)

As set forth above, the WARN Act Litigation would have been complicated, protracted and expensive. The risks of being unable to establish liability and damages were present because of the numerous defenses asserted by the Defendants.  The settlement set forth in the Agreement is well within the range of reasonableness given the uncertainty of establishing liability and damages.  The proposed settlement falls within the range of reasonable litigation possibilities as Plaintiffs' contend that there is a chance that the Defendants (if found to be liable) could be hit

with a judgment of more than $1,638,000 and the Class, if unsuccessful, could receive nothing if Defendants prevail on their defenses.  As with any litigation, the outcome is uncertain and here the Class can realize up to 80% of their Maximum Theoretical WARN claims from the Common Fund, after deduction of the maximum amount for attorney fees.[2] Defendants can cap their exposure at the same amount, in addition to avoiding a trial which would involve significant time and expense for all Parties.   This is particularly relevant here as DSE is in a financially precarious position, and without Amtec's subsequent purchase of certain assets of DSE, there may be little to no money remaining to pay the Settlement Class any damages should this case proceed to trial.  The Class Representatives support the Settlement and Class Counsel believes that the bulk of the other Class Members will have a favorable reaction to the Settlement and not object to it once they have been advised of the settlement terms through a Court approved class settlement notice.

The Settlement was reached as a result of arms length negotiations between the Parties, who had a formal mediation scheduled, but were able to resolve the matter days before the scheduled mediation.  (Stranch Decl. ¶ 6; Braswell Decl. ¶ 9.)   The Parties arrived at the Settlement Amount after DSE provided significant documentary evidence to help Class Counsel determine the Maximum Theoretical WARM damages and the Parties structured the Agreement with this in mind.  (Stranch Decl. ¶ 6; Braswell Decl. ¶ 9.)

---

[2] Subclass A will receive 75% of their Maximum Theoretical WARN claim plus 100% of their balance of personal time off ("PTO").  Subclass B as part of their Release have already been paid 100% of their PTO balance but also have potentially valid release agreements releasing their right to participate in this settlement.  Although Class Counsel believes that there are serious questions as to the legality of these Releases, it remains a significant hurdle for recovery in this matter for Subclass B members.  As a result, Subclass B will receive approximately 34% of their Maximum Theoretical WARN claim.  These are net percentages assuming that the Court awards the full $300,000 fee and expense award.  In any event, the settlement is well within the range of reasonableness regularly found to warrant approval.  *See. e.g. Kizer*, 2012 U.S. Dist. LEXIS 63795, at *24-25 (granting preliminary approval of settlement that provided 31% of maximum recovery for class).

The Agreement is therefore in the best interest of the parties and is fair, reasonable and adequate to all concerned.   Accordingly, the Parties respectfully request that the Court preliminary approve this Settlement and a hearing for the final consideration and approval of the Agreement.

WHEREFORE, the Parties respectfully request that the Court enter the proposed Form of Order, attached hereto as Exhibit C: (1)   preliminarily approving the Agreement between Plaintiffs, on their own behalf and on behalf of the Class of similarly situated former employees of DSE and the Defendants; (2)  preliminary certifying the above-described Class for settlement purposes and dismissing Amtec with prejudice; (3) approving the form and manner of Notice to Class and the right to Object to the Agreement; (4)  scheduling a Fairness Hearing for the Final Consideration and approval of the Agreement; and (5)  finally Approving the Agreement.

Dated:  October 25,  2013

Respectfully submitted,

s/ J. Gerard Stranch, IV

J. Gerard Stranch, IV, #023045 (TN) (Pro Hac Pending)
Benjamin A. Gastel, #028699 (TN) (Pro Hac Pending)
**BRANSTETTER, STRANCH & JENNINGS, PLLC**
227 Second Avenue North, 4th Floor
Nashville, TN  37201-1631
(615) 254-8801
gstranch@branstetterlaw.com
bgastel@branstetterlaw.com

Marcus Braswell (#146160)
Pedro Herrera (#930091)
**SUGARMAN & SUSSKIND, P.A.**
100 Miracle Mile, Suite 300
Coral Gables, FL  33134
Tel.:    (305) 529-2801
Fax:    (305) 447-8115
Email: mbraswell@sugarmansusskind.com

**Counsel for Plaintiffs and the Proposed Class**

**CERTIFICATE OF SERVICE**

I hereby certify that I have on this 25th day of October, 2013, I served a copy of the foregoing document on each party of record via the U.S. District Court for the Middle District of Florida's Electronic Filing System.

_/s/ J. Gerard Stranch, IV____